Mr. Schnitzer. Good morning, Honors. May it please the Court, my name is Jordan Schnitzer and I represent the insureds in this case, Robert Sonny Wood and his business, Access Medical. Could we move the microphone up just a bit? Sure. There you go. That's great. In September, oh and I would like to reserve or plan to reserve five minutes for rebuttal and addressing the counter appeal. In September 2016, when my clients were being sued in the Switzer action, Nautilus' own lawyer, Eleanor Welke, wrote to Nautilus and said that in order to negotiate a settlement, in good faith, those were her words, in good faith, she needs $600,000 to $800,000. Nautilus did the exact opposite. It gave its attorney zero dollars to negotiate and as a result, the insured, Mr. Wood and his business, Access Medical, suffered a multi-million dollar judgment. One thing that's very important to consider in the context of these arguments is that Nautilus did not appeal the finding of the district court that there was a duty to defend. The difference between the parties in this case on one of the aspects is when that duty arose, which is a mixed question of fact, which this court will review de novo. But when Nautilus, what's more is when Nautilus took control of the defense in 2016, it had the duty to make reasonable settlement decisions. And whether a duty to settle exists is a question of law or at worst for us, a mixed question of law that this court should review de novo. The district court in this case said that there was only a duty to settle when there was a duty to defend. But that's not the law. The court ignores that the duty to settle also attaches when there's a right to defend. And that's what happened in this case. Nautilus gave itself an ironclad right to defend any case it wants, even non-covered claims, and to settle any case it wants without the insured's consent. And when Nautilus took the wheels of the defense, it assumed the duty to steer that defense responsibly. And that's straight out of Allstate v. Miller, which is a seminal bad faith case in Nevada. The right to control settlement negotiations and settlement discussions creates the duty of good faith and fair dealing during negotiations. Otherwise, the insurance company could gamble where only the insured could lose. And that's exactly what happened in this case. And that's not controversial. This court in Bohemia held the exact same thing. Once you exercise the right to control, there's correlative duties, duties of diligence, good faith, and fidelity. We cited also the Ging case from Florida, where the Fifth Circuit court found the same. And so that's exactly what happened here, where under the contract and in reality, Nautilus was calling 100 percent of the shots when it assumed the duty, when it assumed its contractual right to defend. And one of those shots was to overrule its own lawyer and not try to settle the case. It made the intentional choice not to try to negotiate when there were multiple opportunities to do so. That was self-serving. It was contrary to the restatement, section 24, that requires them to make reasonable efforts. And so what they did was they gambled with Mr. Wood and Axis's medical money that there was no duty to defend. Nautilus lost that issue, but so did the insurer, because they have this multimillion-dollar judgment. Now, even if there's a question about whether or not there's a duty to settle once you assume control, the duty to defend arose back in September 23, 2016. This is an issue that Until extinguished by the declaratory judgment action. That, no, I would disagree, because the declaratory judgment action only dealt with the issue of what was before the court as of February 24, 2015. So what Judge Dorsey in the first action didn't have, and what the Ninth Circuit didn't have on eventual appeal, is the information related to Ms. Welke's mediation brief. It didn't have the But the mediation letter doesn't have anything to do with the duty to defend. It's an evaluation of risk, right? I would disagree. I think the mediation brief does have something to do with the duty to defend, because So what in the letter dealt with the duty to defend? The letter deals with the duty to defend because it's the information contained in there, which Ms. Welke knew at the time that the email at issue saying Alpha Tech saying that there was a banishment of their right to sell to Cottage Hospital. That was the whole issue, was whether or not that was a disparaging comment and whether or not that was the allegation.  And so that Let me ask, if I understand the sequence right, and you can correct me if I'm wrong, you have the suit filed, they assume the defense, they file a deck action, they win the deck action, and then there's the mediation. Am I correct? The mediation brief is seven, I think it's seven days before Judge Dorsey's order comes out. Well, the mediation brief, yes. But the mediation occurred after, right? Yes. And so at that point, there's a judgment that says they had no duty to defend. Correct. But it's as of Judge Dorsey was very specific in her order that that judgment was as of February 24, 2015. And that's why I started the argument today saying what's not on appeal is the finding in this case that there was a duty to defend. Judges do found that as of July. Right. As of a different date. Right. And so the issue before the Court today is not whether or not a duty to defend exists, because that's been decided and that's not appealed. And so I think what you're referencing is about whether or not they could make a settlement decision based upon Judge Dorsey's order. Okay. Can you clarify a different point for me? Sure. We know that the recommendation was, or the thinking was, this case could settle between $600,000 to $800,000, right? Correct. There was no offer to that, was there? There was no offer. Right. There was no offer of that. That's correct. And there seems to be some dispute about the million-dollar settlement. Was there an unconditional offer from the plaintiff in the underlying case to settle for a million dollars? No. And that's what Judge Dorsey or that's what Judge Duver relied upon, and that was an error. Yes. That's an error of law, because — As I understand it, and you correct me if I'm wrong, there was a suggestion that it would settle for a million dollars cash, and they declined a million dollars paid over time, correct? Correct. They declined a million dollars paid over time. All right. So what was the formal offer from the plaintiff to settle at any time? Was there ever a formal offer? Yes. There was a formal offer. I believe the lowest it got was $1500, $1600, $1700, something like that. Was there a demand from your client to settle within policy limits? To the insurance company? Yes. Yes. When? That was taking place throughout the context, and even, you know, Judge — I'm sorry, Eleanor Welke, there's the tripartite relationship. So she's representing my client as well, saying, give me $600,000 to $800,000 to negotiate. So that's asking for settlement authority to try to get — Well, it's asking for settlement authority, but that is somewhat different from an insured demanding that the insurer settle within the limits of policy. I mean, that's what triggers excess liability. I would disagree with you on that point. I think when you look at all C.P. Miller, they have duties to make reasonable settlement decisions. We don't have to ask them to do that. That's their duty. We don't have to ask them to do what the law says their duties are. Right. But the district court said that they never had a realistic opportunity to settle within the policy limits. So what would you point to to show that that was clearer? Sure. So the reason that's — well, I don't think it's clearer. I think it's a de novo standard because the district court viewed it through the wrong lens. The district court viewed it through the lens of, was there a formal settlement demand? And even in their — in Nautilus' brief, they say, here are the things she said, and every time she said, well, that was not a formal settlement demand. That was not a formal settlement demand. That was not a formal settlement demand. And so all C.P. Miller talks about, formal settlement demand is just one factor. It's unfair — it's unfair to have to show that it definitively would have settled because it incentivizes bad conduct like here, where you have money. They had $100,000, $150,000 in their pocket, and they wouldn't offer it. Because what happens if they offer it, if they say, hey, we'll put up $150,000, and Mr. Wood had already put up $500,000? Well, then Mr. Altooni and Mr. Switzer are going to come down, and there's going to be a negotiation. And so now they're risking a formal settlement demand within the policy limits. But by withholding that money, that creates the advantage to them. And so the fact that the district court took the formal demand as the only factor was an error of law. And so we cited Gibbs, Planet Bingo, Berglin. Those are all California cases. All say the same thing, which is, you don't need a formal settlement demand. I'm not sure I read the district court as saying that you had to. I mean, what the district court said was that there was no realistic possibility to settle, and then it pointed to a bunch of facts that supported that conclusion, one of which, and I take it you don't disagree, that what formal demands you've received are relevant to assessing, even if not dispositive. Absolutely, yes. Those can be relevant. And so if this was a case where they had demanded $100 million and there was a million-dollar policy limit, that's not close. But you look at the Berglin case, there was a demand over a million, which was the policy limit. But there was testimony from experts that said, even when you demand over a million, when you negotiate, sometimes they'll take less. And so in this case, what we have is we have Mr. Altunian is trying to negotiate the case over and over. He attends mediation only for Nautilus to offer zero. He tells Ms. Welke, I'm not going to take less than a million dollars. And the undisputed testimony from the claims handling expert was that that's a signal to settle for the policy limit when someone mentions the policy limit and I'm not taking less. Closer to trial, he goes to Mr. Phillips' office and he negotiates all day. Again, Nautilus offers zero. So he wanted to settle. Settlement was possible. Ms. Welke said she understood the informal demand to be between a million and 1.5, and don't forget Mr. Wood was willing to put up $500,000 cash. And so when an insurance company knowingly resists participating in mediation and settlement talks, any ambiguity about what would have happened at that mediation or at that settlement should be resolved against the insurer. Because zero dollars offered and zero effort made to try to settle the case, that's a perfect recipe for bad faith. And so, you know, again, only considering the formal settlement offers here, which is, if you really go through Judge Du's order, that every single reason was based through the lens of there was no formal settlement demand. She didn't cite any other fact to say there was no realistic possibility of settlement other than to repeatedly talk about formal settlement demands. And so, again, here, the insurance company had money. And so they created the situation where there was no formal settlement demand, because why do you say that? Because if you're going to you can make a formal settlement demand any time. And often, you know, people in the insured shoes will say, I need a demand from you that I can take to the company. So why do you say that they, I don't understand your argument. Yeah, so they create this, and I should have clarified, they created the situation where there was no formal demand within policy limits. Because at the mediation, they had started at 1.9 million. The expectation at mediation is you're going to come down from that number. Mr. Wood comes up to the 500,000, and that's all he has. And as Mr. Altunian comes down, if you have no more money, you're not going to bid against yourself. So now Nautilus is hiding this 100,000 in their pocket. Had they offered that money, Mr. Altunian is going to come down again. That's the expectation at mediation, right? Right. Or if somebody talks frankly with the parties about the existence of insurance and the need to have a demand within policy limits. And that's what. But that, but, so I don't understand why you said they created the situation where there was no demand. No, no formal demand. It seems to be a stretch. Sorry, yeah, no formal demand within policy limits. Yeah. And so it's because they had money set aside that they didn't offer. So they're creating the situation where the negotiations are stalling because they're not putting up the money that even they thought they should put up. But what's more important is, if you look at Blueridge, Blueridge says that their coverage beliefs that they had, had no place at the settlement table, right? And so they should have been considering what is the exposure to the insured. And in this case, the exposure to the insured was massive. Ms. Welke was spot on. She said this is a $3 million verdict that's coming. There's potential for punitive damages. And that's exactly what happened. And so the Blueridge case tells us, you need to look at the exposure to your insured and that should be your only concern. Not whether or not, you know, you think there's coverage or you don't think there's coverage. And so that's why we think Judge Du got it wrong that they considered irrelevant evidence. And again, this is an issue of law, because she's considering things that she's not supposed to be considering. And so on that basis, we think that Nautilus made an unreasonable settlement decision when it considered whether or not the issues were covered. Now, let me ask you a completely different question.  And it just was not obvious to me from the record of the briefs. If I'm correct, the basis for coverage was the claim of interference with prospective business advantage. That was one of the potential covered claims. What else? And the, well, the focus on this email and Ms. Welke... Yes. ...claim. Yes, yes. Yeah. And if I read the record correctly, that claim never went to the jury. Is that right? That claim never went to the jury, but... Why was that? I mean, first of all, we have some argument of, I think your client moved to dismiss that claim. And I don't see anything in the record that tells me what happened to it. It's not on the jury verdict form. Right. So the only basis, I guess what I'm saying is the only basis for coverage never went to the jury, right? I disagree with that. So if you look at, in the supplemental record, page 230, the verdict form actually has a separate line item that says damages for profits from sales at Cottage Hospital. And so... Right, but it doesn't have liability for interference with prospective business advantage, right? Not for that specific claim, but it was related. The only claim, if you read the whole record, the only issue related to lost profits from Cottage Hospital was this e-mail where they stole the business, and that was the allegation. And so that ends up on the jury verdict form, and that ends up being paid. But the issue... But if there's no occurrence, there's no coverage. Well... And the occurrence was based on the claim for prospective business advantage. I'm not arguing with you. I'm just trying to understand what happened, because it looks like the only basis for coverage, excluding the damage, went away before the case was tried to the jury. Coverage is two different issues in this case. We have coverage for defense... Right, right. ...and we have coverage for indemnity. I'm just, I just didn't understand that part. Yes. Yes. So on that point, I would say Nevada has never adopted indemnity as a I think the indemnity issue is, doesn't matter, because in the trial in this case... I understand the duty to defense rather than duty to indemnify, but the indemnification sort of plays into the analysis. Well, below, the Nautilus argued, because I had asked the judge to consider indemnity, and they said indemnity was not part of any of our claims for relief, and Judge Tu... Right, no. I get that. ...agreed with that. So indemnity, with all due respect, doesn't play a role in this case, because they successfully argued before the trial court that indemnity was not part of any of our claims. And so when you're talking about coverage, the focus should be on the duty to defend, which is not on appeal and has been, and is the law of the case now. So I'm well into my rebuttal time. Thank you. Okay. You may reserve. And we'll hear from Mr. Stern. Good morning. May it please the Court, Max Stern of Duane Morris for Appellee and Cross-Appellant Nautilus Insurance Company. I'd like to reserve five minutes for rebuttal. I'll start with Plaintiff's Appeal, which concerns their theory of bad faith, failure to settle. That's what the Plaintiff's Appeal is about. It's not about the many other issues that were tried. And this Court should affirm, for the reasons that were just discussed in the oral argument, the fact is it is not clear for the district court to, after a contested trial, to find that Nautilus act reasonably in not offering to settle the Switzer case at the three junctures that plaintiff offered in their case as the opportunities to settle. May I ask a question? Certainly. Again, I may have missed on the record. Did Nautilus ever give any settlement authority? Nautilus did not give settlement authority. It did not. So it did not give any settlement authority. And I don't see any indication that even seriously considered giving settlement authority. Is that a fair reading of the record? I don't think that the record gets into the seriousness of consideration, because at the point at which we start the discussions about settlement, we're up to that mediation. At that point, it had an order from Judge Dorsey that it did not have a duty to defend or indemnify, for that matter, because the indemnity depends on the potential for coverage. Defense of the potential for coverage, indemnity coverage. So if there's no duty to defend, there's no duty to indemnify. Well, there's probably an opportunity to settle, though. You'd agree with that. Right. There's no opportunity to settle there. Oh, no. I mean, I think if Nautilus had come in, just a fair reading of the record, to the mediation and given $500,000, the case would have settled, likely. I don't think that's a fair reading of the record at all, because the statement was that it would take a million to 1.5. That was the guess by defense counsel at the time. But Nautilus had been told, you have no duty to defend and no indemnity allocation. So it's reasonable at that point. But that's not one of the settlement opportunities that was focused on in Plaintiff's case. That's what we mean. That's described very clearly in the order. There's three opportunities. And those are, in the period of time, three opportunities are, number one, before the first tender, or right at the time of the first tender, that number two, and that's the saying that, look, your defense counsel has said it could settle for 6800. And then that was tested, and it was found that's not actually an accurate representation by Mr. Phillips, the independent counsel, the cumulus counsel, for the plaintiffs, for the insurers. So that wasn't an opportunity to settle, and they said that. May I move you ahead to the point at which Judge Due said you had a duty to defend, which is the time of the second tender, right? The first — actually, the time of the first retender, she finds there's a duty to defend. First retender. But it was reasonable to believe you did not have a duty to defend, because this is where Judge Due differed from Judge Dorsey. But it was about the same piece of evidence, deposition testimony, that Judge Dorsey in the first coverage action had said, look, if I reach this issue, I would find no duty — I don't have to reach this issue, but if I did — But she didn't reach it. She didn't reach it, but she provided analysis and instruction. And if you're an insurance company, you have to pay attention to what district courts tell you is the proper analysis and instruction. You may not be bound by it. You may know that you have other opportunities to litigate it, but there, you're going to listen. That's what insurance companies do, is they listen to what they get in declaratory relief actions, and they try to figure out what they should do. Well, in addition, though, you've got two other — a number of other tenders. Judge Due found that she had a duty to defend after the first retender. Right. And that triggers some duties, correct? Well, it does — it may trigger some duties in the abstract, but you still have to look at was there an opportunity to settle, was it reasonable at that point in time? Yeah. Now, so tell me about that. In that period of time, were there any opportunities to settle? She found there weren't. And she, contrary to what my friend across the aisle says, she focused on the opportunity — the phrase she uses is opportunity. She's very conscious of the difference between opportunity and demand. But she finds there's no opportunity because the case they put on wasn't credible. The witness they put on wasn't credible. Mr. Phillips, the Cubas counsel, said, oh, there's an opportunity to settle for $6,800,000. That wasn't true. Oh, there's a demand for a million. That wasn't true. So these opportunities to settle — Why wasn't that — I mean, maybe I'm misreading it, but I thought the million cash would have settled it. That is not correct. That is the — in fact, Judge Due explicitly found that didn't happen. I know. There was no demand. I was puzzled by that because there was testimony to that effect at the bench trial. But the testimony wasn't credible. And I can point you to the paragraph where she says that. No, I know what she said. She says it twice, actually. I was looking — I was tracing that back to the testimony at the bench trial. And there seemed to be testimony that they would settle for — there was an offer to settle for a million cash, but the insurer just said, I can only — I can do that over 10 years, and they said no. That is not what happened, Your Honor. Respectfully, that — the record reflects a — I'll re-examine. You don't need to waste your time on that. Okay. So going on to say — so the case they tried is one where there's three opportunities, 6 to 800, then a million demand. 6 to 800 is a general sense. So she's not looking at an explicit demand there. She's not focused on — she just says that's from the wrong time period. That's way back at the mediation, not currently. And nobody said it was an opportunity to settle. They said it was a settlement recommendation a year ago. Secondly, it's the million-dollar demand. That didn't happen. That was not truthful testimony in court. So at this point, the judge has heard and decided, hearing the various witnesses' testimony, she considered what Mr. Phillips, the independent counsel, said, what Ms. Sue, the insurer's coverage counsel, Nautilus' coverage counsel, said, and she looked at the documents that back things up and Mr. Woods' testimony, that the only demand was 1.9, and says, you know, my finding of fact is this million-dollar demand never happened, and there was no opportunity to settle because the last demand was 1,000,009. And so there was no opportunity to settle. Now, you could differ. Someone could argue differently, the way that my friend across the aisle argues that you should read the facts a different way. But we have a finding of fact here, and that should be sustained on opportunity to settle unless there's clear error. But that's just one of the three reasons why there can't be bad faith, because, one, there's no opportunity to settle in this relevant period, 2016 to 2017. Number two, it was reasonable at all times for the insurance company to not settle. That's a finding of fact, not a finding as to what the law was. But this is what the testimony came in from the insurance company and their coverage counsel, and they specifically said, look, we relied on what George Dorsey said, said we didn't have a duty to defend and we have no duty to indemnify, so we don't have a duty to pay anything. And because the duty to settle, as plaintiffs argue, arises out of the duty to defend, there's no duty there. And whether or not that's right as a matter of law, it was reasonable to think so. That was the fact finding. It was reasonable to think so. That can't be disturbed absent clear error. And then finally, there's the issue that, contrary to what my friend across the aisle argues, it is not true that an insurer has a duty to settle, has a duty to settle if it involves payment of non-covered claims. That is not the law in California. It's not the law in Nevada. It's not the law that Nevada has relied on California for. The California cases that are cited, the seminal cases, Kamianawa, Johansson, and then most recently sort of fully explained in Camelot by the Bay, all come to the conclusion that the insurer does not have to pay for covered items. It can't consider, if it considers covered items in terms of the reasonableness of the amount being demanded, that doesn't help it on that reasonableness criteria. But you would agree that as to the claim for interference with prospective business advantage, that's the basis you defended on. And so to the extent that you ever participate in settlement, that was the primary claim you would have considered, correct? We might have considered it, although the claim was actually for an intentional interference. That's how it's pled. That's how it was proved. Yeah. The plaintiff, underlying plaintiffs, the Switzers, never thought there was any insurance coverage. It appears they kind of tried to plead out of it. They didn't want there to be coverage. They said in discovery responses, we don't have any defamation claim. They avoided making a claim that was a potentially covered claim because they wanted to they thought they not only wanted to, they were able to prove this was all intentional wrongdoing by their business partner who cheated and stole from them, which is why they got hit for a big number and punitive damages or treble damages. So what I anticipate your friend on the other side is going to say is, look, we have this claim for intentional interference with business advantage, and the bulk of the damage is related to that. I don't know whether that's true at trial or not, but that's his argument in terms of your duty to settle that claim. But that can't be a basis for finding a clear error here. There's no evidence on the record about what the relative value of this college hospital's claim. It's also, there's no evidence supporting what he just said, what my friend across the aisle said minutes to this panel, that the only evidence on cottage hospital was this one e-mail. That's not in any part of the record I've seen on appeal, and it's not in Judge Du's order. So the – whatever value might be assigned to the cottage hospital part, there were other claims such as conversion, intentional misrepresentation that was attempted to be tried. I don't think they got a jury instruction on that. Those things may have – they still wouldn't be covered because they're intentional wrongdoing, but – and there's an exclusion in the policy for intentional wrongdoing when you're intentionally depriving the rights of another. And that's what the jury found here. But your policy did provide coverage basically for defamation. Defamation – Right. Which is considered an intentional tort. Well, it is. It's considered an intentional tort, but the policy – this is a side issue, but the policy coverage for defamation in both Nevada and in California is really for when you have a – more of a negligent defamation, that is, if you intend to injure somebody, you can't get coverage for that, and there's exclusions in the policy for intending to injure somebody. So if you defame someone with an – or you disparage them with an intent to injure them, that isn't covered. So I'd have to respectfully disagree with the description. So in terms of what I was saying, the third basis, which is also a factual finding that you'd need to find clear error in order to reverse, is that they had a reasonable belief to think that they didn't have to pay anything in settlement or – and certainly not the full amount of these settlement amounts, because only one of 31 claims was potentially covered. That case was not being – and the judge found, Judge Dueh made a factual finding at each of these three alleged opportunities that it was reasonable for the insurance company to not fund the entire settlement because of this reason. And there was – there's no contrary evidence in the record that shows that, oh, they should have funded X percent or they should have funded Y percent. It really was 95 percent of the damages were Cottage Hospital. I don't think that's the accurate. Description of the facts, but it doesn't matter, because right now there's no basis for clear error. And they would need to get to clear error. And in the end, when you have a situation where a judge – here's a court trial. That's what their factual findings are made are going to be the highest level of deference this Court gives on appellate review. It has to be – find clear error and it's a definite and firm conviction a mistake has been committed. That you're not going to be able – that shouldn't be found in a situation where the judge has heard the plaintiff's key witness not tell the truth on the stand. Moreover, that judge has had the opportunity to examine the various witnesses' credibility, including the witnesses for the plaintiffs, the witnesses for the defense, and the plaintiff's expert, and decide whether what weight goes to their testimony. So when my friend across the aisle says the claims handling expert's unopposed testimony says this, the judge wasn't obligated to give any weight to that expert testimony, because she heard from the actual people who were involved and described what they did, why they did it, and she concluded that when it came to settlement, Nautilus acted reasonably at all times. That's factual finding, three separate bases, each independently would demonstrate that. So don't see that this is a situation where clear error can be found. To respond to a couple of the points made in the initial argument, right before we get to my deferred time, I want to point out that there's an argument that Nautilus took control of the defense. That's not accurate. In 2014, Nautilus approved independent counsel. Under the long decision in California, that means – and as we all know, what human rights counsel means, that means that the insured had control of the defense. Moreover, she made a factual finding that the monitor – excuse me – the cumulus counsel was involved at all points and actually acted to protect the interests all the way through trial. So as came up in the prior oral argument, had there been a desire to get a demand after the third retender or after the first retender to get a new demand, that could have been solicited. That isn't what happened, though. We're stuck with the facts we have in this case. And on those facts, Judge Du made factual findings that are entitled to the highest level of deference. It can't be reversed without clear error. Can I ask you a question about the cross-appeal? So one of your two claims on the cross-appeal is that the district court was wrong to say that you acted unreasonably after the third and fourth retenders. But the district court didn't think that they got any damages for that. So I guess my question is, why do you care about that finding? Well, if this Court was inclined to find clear error and reexamine the issues, we would — then we would be entitled to a ruling on our protective appeal on those points because it would be relevant to say that, for example, if there were settlement opportunities and she was wrong about saying there was no settlement opportunities and they should have considered a settlement opportunity in that period of time, we'd be entitled to say, look, all Nautilus did was follow what a other district court had told her, that this district court looked at — Judge, you looked at parts of Judge Joyce's opinion, but not other parts that Nautilus continued to rely on and it should have been able to continue to rely on those. So this would be — I guess you're saying that it would be relevant to the assessment of the damages if you were to lose on some of the other issues. Yes. It's a protective appeal, really, Your Honor. Okay. I mean, no one, I'm sure, likes being told it was in bad faith, even if there's no damage that resulted, no liability. So we're preserving that issue. And, of course, I'll address the issues of reimbursement further. You have our briefing on it. I'll address that in my rebuttal remarks. Well, I mean, I guess — Well, I can — The rebuttal is supposed to be rebuttal on the cross-appeals. Then I'll take a little bit of my reserved time and address the reimbursement issue, because this is an important one. There already is a judgment against the plaintiffs for reimbursement of amounts that were spent by Nautilus and Defense through 2015. They've got an order and a judgment, and, of course, plaintiffs aren't paying on that judgment, but they got a judgment on that. Having gotten that judgment, it was wrong for Judge Due to say that subsequent events and the subsequent arising of the duty to defend upon retenders prevented Nautilus from reimbursement at that — for this later period of time. The periods of time when there was no duty to defend at all still exist, and they continued from 2015 all the way until July 2017, and Nautilus should be entitled to reimbursement for that period. And, frankly, the statement by — any statement about never should have — never had the duty to defend never arising isn't sourced in any of the precedent that the — the U.S. Supreme Court used. It's not in the main body of their decision. It is the dicta in the conclusion, but it isn't really relevant. And that's why we don't rely on issues that courts didn't consider. The Nevada Supreme Court didn't consider what would happen if the duty to defend later arose. What about the periods of time when there was never a duty to defend, that early period of time? But this Court did consider that issue. This Court heard the arguments, the very same argument, and said, that's not right. There's going to be reimbursement awarded through 2015. I'll reserve the rest of my time.  Look, I've got a lot of ground to cover in three minutes. Okay, so the first thing, the indemnity issue. Allstate v. Miller specifically talked about in the Nevada Supreme Court said, we're not dealing with indemnity in this duty-to-settle case because indemnity is a separate coverage. Right, I got that. Yeah, well, it's a — No, but I was asking a question because I didn't understand the factual situation, but I understand your argument. Okay, all right. Yeah, because, you know, from our perspective, the duty to settle can arise from the duty to defend. And that's what the Court found in this case. Counsel acknowledges that, in its arguments, that Judge Due made an error of law. Judge Due's error of law was considering whether or not — was considering Judge Dorsey's order. Blue Ridge makes it clear that the only factor that they can consider is whether or not the judgment will exceed the policy limits, whether or not there's a risk of an excess judgment. And they talk about Kamenel, Johansson, Camelot by the Bay. All of those cases actually support us. Camelot is the one that Judge Due cited. In that case, there was no risk of an excess verdict. So there was no risking the insured's money. But in this case, Welke told us in 2016, there's a huge risk of an excess verdict, $3 million in regular damages plus punitive damages. And so, you know, I love this quote from Kamenel. An insurer who denies coverage could include defense, does so at its own risk. And although its position may not have been entirely groundless, if the denial is found to be wrongful, it is liable for the full amount that will compensate the insured for all detriment caused by the insurer's breach of the express and implied obligations of the contract. And the insurer should not be able to profit by its own wrongdoing. And that's Kamenel. That's the case that they're citing. And that's exactly what we have here, is the insurance company is considering other things that under Blue Ridge they're not entitled to do. He made the point about CUMIS counsel. CUMIS counsel is there to watch out for coverage. CUMIS counsel is not there to have settlement authority from the insurer. That's what Eleanor Welke was doing. And she asked for it, and she didn't get it. So that's a totally separate situation. And then with regard to the cross-appeal, my one point is, never means never. That was not dicta in the Nevada Supreme Court's opinion, because in the Nevada Supreme Court, the facts before it was there had never been a duty to defend found. But why, I mean, why would that be the rule? I mean, if there's a period of time when the duty to defend hasn't arisen, and yet they nonetheless are defending, and then, but if there is no duty to defend in that period, why should the happenstance that a duty to defend later arises means that they don't get reimbursed for the defense that they were providing at a time when they didn't need to? Because the whole reason for the reimbursement is they're found to have, it was an unjust enrichment theory. And so if you end up getting, finding that there's a duty to defend later, they're not unjustly enriched because now they're on the hook for the defense and now they could be on the hook for indemnity. And so they're not unjustly enriched anymore once they've actually had to defend and had to get involved in the case. And would that be the case even if, I mean, suppose they're defending you, but there's not actually a duty to defend, but they're defending you. And then, like, some new claim gets entered, you know, gets added to the case, and now the duty to defend arises. Do you still think they don't get reimbursement for, I mean, it's not that anybody was wrong, it's just that the case is now different, right? Right. And so, no, I don't think they get reimbursement. I think the Nevada Supreme Court was very clear, and it's because the reimbursement on a 43 decision in the Nevada Supreme Court said it's based on an unjust enrichment theory. So you haven't been unjustly enriched if you're defending and you don't have to and it turns out you have to defend later because now you've got the benefit of everything you've done before.  All right. Thank you.  All right. So, rebuttal on the cross-appeal. Thank you, Your Honors. So, to rebut some points that were just made by my friend across the aisle, starting with the Kamenali decision. It is very clear under Kamenali, Johansen, and as those decisions are explained in Kamelot by the Bay, that an insurer can refuse to cover it, to settle based on coverage. And if it does refuse to settle based on coverage, and it does so at its own risk, and the risk is that the eventual trial decision comes out to prove that there was coverage. That didn't happen here. So the citation to Blue Ridge, which wasn't at all about the duty to settle, it had to do with reimbursement claims, is not relevant because it's not talking at the entirety of those decisions. And those decisions make it very clear that no settlement obligation is owed in the end. No damages are suffered if it isn't a covered claim. That's a principal appeal issue, right?  This is not a surreply on the principal appeal. It's just on the cross-appeal issues. So, turning towards the reimbursement claim, I think that Your Honor nailed the important question on the head, which is there is no good reason under the law to presume that a duty to defend and create a complete bar to reimbursement from the comment in the conclusion to the Nautilus decision that when there is never a duty to defend, then reimbursement may be obtained. And it's proper to read that decision as considering the issues before it, which is for a period of time when there is never a duty to defend. For that period of time, reimbursement may be had for the amounts that an insurer advanced but was not contractually obligated to pay. That's clearly the case here all the way through 2017. There was no duty to defend found by multiple courts. This Court, Judge Dorsey, Judge Du, all found that was the case. The pleadings didn't give rise to a duty to defend. The e-mail didn't give rise, in combination with the pleadings, didn't give rise to a duty to defend. So there's no reason why the money should, Nautilus should not be able to get its money back, just as it did for the pre-2015 period. The argument that while that wouldn't be unjust enrichment, that's not supported in the record, and that there wasn't a just benefit that the insurer got from this finding, and it's not supported by the decision, which in a footnote rejects the same kind of unjust enrichment decision that my colleague across the aisle made to the insurer for protecting its own interests. The record doesn't support an absolute rule there, and Nautilus should be entitled to reimbursement just as it was for the pre-2015 period. Thank you. Thank you, counsel. We thank both counsel for their helpful arguments. The case is submitted. We are adjourned for today.
judges: THOMAS, PAEZ, MILLER